**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **FOR PUBLICATION** |
| SPAC RECOVERY CO., | Chapter 11 |
| Debtor. | Case No. 25-12109 (JPM) |

*APPEARANCES:*

**CULLEN & DYKMAN LLP**
*Counsel for the Debtor*
One Battery Park Plaza, 34th Floor
New York, NY 10004
By:      Michelle McMahon
          Kyriaki Christodoulou
          Michael H. Traison
          Bonnie Lynn Pollack

**ORRICK, HERRINGTON & SUTCLIFFE LLP**
*Counsel for FS Credit Opportunities Corp.*
51 West 52nd Street
New York, NY 10019
By:      Nicolas Poli
          Michael Trentin

**UNDERWOOD LAW FIRM, P.C.**
*Counsel for SPV Lit Fund, LLC*
500 S. Taylor, Suite 1200
Amarillo, TX 79101
By:      Samantha A. Espino

**JENNER & BLOCK LLP**
*Counsel for Nomura Securities International, Inc.*
1155 Avenue of the Americas
New York, NY
By:      Jenna E. Ross
          Douglas E. Spelfogel

**KELLEY DRYE & WARREN LLP**
*Counsel for SPV Lit Fund, LLC*
3 World Trade Ctr., 175 Greenwich St.
New York, NY 10007
By:      Maeghan J. Mcloughlin

**UNITED STATES TRUSTEE**
*Office of the United States Trustee, Region 2*
One Bowling Green, Room 534
New York, NY 10004
By:      Andrea Beth Schwartz

**THOMPSON HINE LLP**
*Counsel for Richard Turasky, Jr.*
3900 Key Center, 127 Public Square
Cleveland, OH 44114
By:      Curtis L. Tuggle

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS

**JOHN P. MASTANDO III**
**UNITED STATES BANKRUPTCY JUDGE**

I.    **INTRODUCTION**

This is the Chapter 11 case of the debtor SPAC Recovery Co. (the "**Debtor**").  Before the

Court is the motion of unsecured creditor FS Credit Opportunities Corp. ("**FS Credit**"), dated

December 5, 2025, seeking dismissal of this case pursuant to 11 U.S.C. § 1112(b) (the "**Motion**").

(Dkt. No. 52).  FS Credit argues that the Debtor filed this case "in bad faith" because the case

allegedly serves "no valid bankruptcy purpose" and "there is no reasonable likelihood" that the

Debtor can successfully reorganize.    (*Id.*).    On December 29, 2025, Nomura Securities

International, Inc. ("**Nomura**") filed a joinder supporting the Motion.  (Dkt. No. 60).

On January 2, 2026, the Debtor filed an opposition (the "**Response**"), contending that

dismissal would be contrary to the best interests of all creditors and the estate—particularly

because only Nomura joined FS Credit's Motion.  (Dkt. No. 61).  Also on January 2, 2026, SPV

Lit Fund, LLC (the "**DIP Lender**") filed a joinder opposing the Motion.  (Dkt. No. 62).

On January 6, 2026, FS Credit filed a reply (the "**Reply**"), arguing that the Debtor

commenced this case primarily as a "litigation tactic" to forestall FS Credit from enforcing adverse

state-court judgments, while "continuing to prosecute its own claims" against FS Credit, Nomura,

and related parties for the benefit of certain insiders.  (Dkt. No. 65).

The Court held a hearing on January 9, 2026 (the "**Hearing**").  (Jan. 9, 2026 Hr'g Tr.).  At

the Hearing, Richard Turasky ("**Turasky**"), an unsecured creditor, expressed support for the

Debtor's position without filing a joinder or written response.  (*Id.*).

The Court has reviewed the Motion, the parties' submissions, the arguments presented at

the Hearing, and the record as a whole.  For the reasons set forth below, the Motion is **DENIED**.

## II.    <u>JURISDICTION</u>

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334, 157(a), and

157(b)(1), and the *Amended Standing Order of Reference* dated January 31, 2012 (Preska, C.J.).

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## III.    <u>BACKGROUND</u>

### A.  RELEVANT FACTS[1]

The Debtor is a special purpose acquisition company ("**SPAC**") incorporated under

Delaware law.  (Dkt. No. 9).  On September 26, 2025, the Debtor commenced this case by filing a

voluntary petition for Chapter 11 relief in this District.  (Dkt. No. 1).  At the time of its petition,

the Debtor was a plaintiff in an action pending in the Supreme Court of the State of New York,

New York County (the "**New York Court**"), against defendants FS Credit, Nomura, and related

parties, seeking $53.7 million in compensatory damages and $537 million in punitive damages for

alleged breach of fiduciary duty arising from the defendants' conduct in the Debtor's failed de-

SPAC transaction (the "**New York Litigation**").[2]  (Dkt. No. 9, ¶ 12).  The petition stayed FS

Credit's efforts to enforce a $990,368.90 judgment entered by the New York Court in a separate

litigation arising from the Debtor's default on a promissory note (originally held by the acquisition

---

[1]    The Court assumes familiarity with the facts and procedural history of this case.  For a more detailed account of the factual and procedural background preceding the Motion, the Court refers to its *Memorandum Opinion and Order Granting the Debtor's Motion for Post-Petition Secured Financing*, dated January 2, 2026 (the "**Memorandum Opinion**").  *See In re SPAC Recovery Co.*, No. 25-12109, 2026 WL 18778 (Bankr. S.D.N.Y. Jan. 2, 2026) (Dkt. No. 63).

[2]    The lawsuit arises out of the Debtor's failed effort to consummate a de-SPAC transaction.  In December 2020, the Debtor raised $139.4 million through an initial public offering ("**IPO**").  (Dkt. No. 9, ¶ 5.)  In July 2021, the Debtor identified North Atlantic Imports, LLC d/b/a Blackstone Products ("**Blackstone**") as a potential acquisition target.  (*Id*. ¶ 10).  In December 2021, the parties executed an acquisition agreement, contingent on the Debtor securing sufficient funds to close the acquisition within the ensuing 12-month period.  (*Id*.)  However, the Debtor did not obtain the required funding within that period and, as a result, the Debtor was required to redeem the IPO proceeds to its investors, leaving the Debtor with no ongoing business, employees, or meaningful assets.  (*Id*.)  On May 9, 2025, the Debtor sued Blackstone and certain investment advisers and financing sources—including FS Credit and Nomura—in the New York Litigation alleging that their conduct contributed to the collapse of the de-SPAC transaction.  *See* Verified Complaint, *SPAC Recovery Co. v. North Atlantic Imports, LLC, et al.*, No 652916-2025, 2025 WL 1699449 (Sup. Ct. N.Y. County, May 9, 2025).

target, Blackstone Products, as of the petition date) (the "**Blackstone Judgment**").[3] (Dkt. No. 52, ¶ 11).

According to the Debtor's schedules, the Debtor's only significant asset consists of the $53.7 million breach of fiduciary duty claim asserted against FS Credit and related parties in the New York Litigation. (Dkt. No. 1, Form 206A/B Question 74). The Debtor lists FS Credit and Nomura as unsecured creditors but schedules their claims at $0. (Dkt. No. 1, Form 206E/F). FS Credit and Nomura contend that they are "among the Debtor's largest unsecured creditors by virtue of indemnification claims arising from their involvement in the failed SPAC transaction," though neither has identified a specific claim amount. (Dkt. No. 9, ¶ 12).

On October 6, 2025, the Debtor filed a motion (the "**DIP Motion**"), seeking court approval of a $500,000 post-petition secured loan from the DIP Lender on a priming, superpriority basis, secured by all assets of the Debtor (the "**DIP Loan**"). (*Id*. ¶ 21). The Debtor asserted that the DIP Loan was "necessary to fund [its] Chapter 11 case" because the damages from the New York Litigation are "the only significant source of recovery for its creditors." (*Id*. ¶¶ 18, 20). On October 29, 2025, FS Credit opposed the DIP Motion, arguing that the DIP Loan was "tainted by [insider] self-interest" because the DIP Lender is "wholly owned by the Debtor's shareholders … with no independent fiduciary to vet [its] terms," and that the DIP Loan served no valid reorganizational purpose other than to fund the insiders' litigation against FS Credit and related parties. (Dkt. No. 23, ¶¶ 12, 35, 36).

---

[3]    To facilitate the de-SPAC transaction, Blackstone also extended a $785,000 loan to the Debtor, evidenced by a promissory note. (Dkt. No. 9, ¶ 14). After the de-SPAC transaction failed, Blackstone declared an event of default and commenced a separate action in the New York Court to enforce the delinquent promissory note. *See North Atlantic Imports, LLC v. SPAC Recovery Co*., No. 654852-2024, 2025 WL 1094653 (Sup. Ct. N.Y. County, Aug. 8, 2025). On August 22, 2025, Blackstone obtained a judgment against the Debtor in the amount of $990,368.90, inclusive of interest and costs. (*Id*.). Blackstone subsequently assigned that judgment claim to FS Credit. (Dkt. No. 52, ¶ 11; *see also* FS Credit Proof of Claim, Claim No. 5).

On January 2, 2026, the Court issued a memorandum opinion and order granting the DIP Motion (the "**Memorandum Opinion**").  (Dkt. No. 63).  Although the record reflected that the DIP transaction was conflicted given that the DIP Lender qualified as an insider for purposes of 11 U.S.C. §§ 364 and 101(31)(B), the Court nevertheless found that the Debtor carried its burden to show that the transaction was "intrinsically fair."  (*Id.*).  The Court concluded that the Debtor had sufficiently shown both "fair dealing" and "fair price," given the absence of alternative sources of financing that were realistically attainable under the circumstances, and the need for the DIP Loan to preserve the litigation claim—the Debtor's sole meaningful asset.  (*Id.*).

## B.  THE PARTIES' ARGUMENTS

On December 5, 2025, FS Credit filed the instant Motion.  (Dkt. No. 52).  The Motion seeks dismissal under 11 U.S.C. § 1112(b), on the ground that the Debtor filed this case "in bad faith."  (*Id.*).  Specifically, FS Credit argues that dismissal is warranted because: (1) this case was commenced primarily as a "litigation tactic" to forestall FS Credit from enforcing the Blackstone Judgment, lacking any "valid bankruptcy purpose," and (2) the case is "objectively futile" because the Debtor has nothing to reorganize: it has no ongoing operations, employees, or meaningful assets, apart from litigation claims against FS Credit and related parties.  (*Id.* ¶¶ 31, 34, 36).  FS Credit further argues that "the Debtor's case is essentially a two-party dispute meant to benefit a select group of insiders," and that the New York Court—not this Court—is the proper forum to adjudicate that dispute.  (*Id.* ¶ 35).

The Debtor objects, arguing that FS Credit has failed to establish either "subjective bad faith" or "objective futility."  (Dkt. No. 61).  According to the Debtor, "subjective bad faith" requires a showing of an "intent to use the bankruptcy process *solely* to delay, frustrate, and relitigate state court issues," and "objective futility" requires a showing that the debtor lacked "a

reasonable possibility of emerging from [bankruptcy] at the time of filing." (*Id.* ¶¶ 14, 15) (citing *In re Sletteland*, 260 B.R. 657, 661-62 (Bankr. S.D.N.Y. 2001)) (emphasis in original). The Debtor further argues that, even if the Court were to find "cause" under § 1112(b)(1), dismissal is "not in the best interest of the creditors and the estate" under § 1112(b)(2), particularly where only one creditor, Nomura, has joined FS Credit's Motion, and Nomura's interests are adverse to the Debtor's. (*Id.* ¶ 5).

## IV.    **LEGAL STANDARD**

Section 1112(b) of the Bankruptcy Code provides that a court may, "after notice and a hearing," dismiss a Chapter 11 case or convert it to Chapter 7 liquidation "for cause," whichever is "in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(1). Subsection (b)(4) lists sixteen examples of events that may constitute "cause":

(A)    substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;

(B)    gross mismanagement of the estate;

(C)    failure to maintain appropriate insurance that poses a risk to the estate or to the public;

(D)    unauthorized use of cash collateral substantially harmful to one or more creditors;

(E)    failure to comply with an order of the court;

(F)    unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;

(G)    failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under Rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor;

(H)    failure to timely provide information or attend meetings reasonably requested by the United States Trustee (or the bankruptcy administrator, if any);

(I)    failure to timely pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief;

(J)    failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court;

(K)    failure to pay any fees or charges required under chapter 123 of title 28;

(L)    revocation of an order of confirmation under section 1144;

(M)    inability to effectuate substantial consummation of a confirmed plan;

(N)    material default by the debtor with respect to a confirmed plan;

(O)    termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and

(P)    failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

11 U.S.C. § 1112(b)(4).

Though "not enumerated in 11 U.S.C. § 1112(b), bad faith constitutes cause for dismissal." *In re 300 Washington Street LLC*, 528 B.R. 534, 550 (Bankr. E.D.N.Y. 2015); *see also In re Kaplan Breslaw Ash, LLC*, 264 B.R. 309, 334 (Bankr. S.D.N.Y. 2001) ("Cause, for either dismissal or relief from the stay, may be found based on unenumerated factors, including 'bad faith[.]'"). "Bankruptcy courts employ their equitable powers to dismiss a case filed in bad faith, as good faith is a well-accepted precondition to bankruptcy relief." *300 Washington Street*, 528 B.R. at 550 (citing *In re 9281 Shore Rd. Owners Corp.*, 187 B.R. 837, 848 (Bankr. E.D.N.Y. 1995)); *see also In re Schur Mgmt. Co., Ltd.*, 323 B.R. 123, 127 (Bankr. S.D.N.Y. 2005). A petition filed in bad faith "is an abuse of judicial process or of the jurisdiction of the bankruptcy court." *In re Kingston Square Assocs.*, 214 B.R. 713, 724 (Bankr. S.D.N.Y. 1997).

Bad faith may be found where, "at the time of filing, there is 'no reasonable probability of emerging from bankruptcy or successfully reorganizing,' or 'where there is evidence of an intent to delay or frustrate the efforts of secured creditors to enforce their legitimate rights.'" *In re Froman*, 566 B.R. 641, 647 (S.D.N.Y. 2017); *see also In re Northtown Realty Co., L.P.*, 215 B.R. 906, 914 (Bankr. E.D.N.Y. 1998). In *JJ Arch*, this Court explained that the "critical test" for bad faith consists of two inquiries: (1) whether there was "no reasonable likelihood that the debtor intended to reorganize" (the "subjective bad faith" prong); and (2) whether there was "no reasonable possibility that the debtor will emerge from bankruptcy" (the "objective futility" prong). *In re JJ Arch LLC*, 663 B.R. 258, 281 (Bankr. S.D.N.Y. 2024) (citing *Baker v. Latham Sparrowbush Assocs. (In re Cohoes Indus. Terminal, Inc.)*, 931 F.2d 222, 227 (2d Cir. 1991)); *see*

7

*also In re General Growth Props., Inc.*, 409 B.R. 43, 56 (Bankr. S.D.N.Y. 2009) (noting that "the standard in this Circuit is that a bankruptcy petition will be dismissed if both objective futility of the reorganization process and subjective bad faith in filing the petition are found").

In assessing the subjective and objective prongs of bad faith, courts examine "the totality of the circumstances," focusing on whether the filing reflects "an intent to abuse the judicial process" or "the purpose of the reorganization process." *Clear Blue Water, LLC v. Oyster Bay Mgmt. Co., LLC*, 476 B.R. 60, 68 (E.D.N.Y. 2012); *see also In re Eatman*, 182 B.R. 386, 392 (Bankr. S.D.N.Y. 1995). Relevant factors that inform a court's assessment of bad faith include:

> (1) the debtor has only one asset; (2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors; (3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt; (4) the debtor's financial condition is, in essence, a two-party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action; (5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights; (6) the debtor has little or no cash flow; (7) the debtor cannot meet current expenses including the payment of personal property and real estate taxes; and (8) the debtor has no employees.

> *In re C-TC 9th Avenue Partnership*, 113 F.3d 1304, 1310 (2d Cir. 1997).

These factors are meant to "guide courts" in "assessing the totality of the circumstances." *In re Hartford & York LLC*, No. 13-45563, 2014 WL 985449, at *4 (Bankr. E.D.N.Y. 2014). "Depending on the situation," one factor may carry "greater weight" than another, and "the number of factors on [either] side of the balance is not, standing alone, determinative of the outcome." *Id*. "The existence of 'bad faith' depends not on any one specific factor but on a combination of factors determined after careful examination of the facts of the particular debtor's case." *In re 68 West 127 Street, LLC*, 285 B.R. 838, 844 (Bankr. S.D.N.Y. 2002). "The determination of whether a debtor filed a petition … in bad faith so as to justify dismissal for cause is left to the sound discretion of the bankruptcy court." *In re Taylor*, 628 B.R. 1, 7 (Bankr. D. Conn. 2021).

8

## V.    <u>ANALYSIS</u>

The Court evaluates FS Credit's request for bad-faith dismissal under the two-pronged test examined in *JJ Arch*: subjective bad faith and objective futility.  *See JJ Arch*, 663 B.R. at 281; *see also Cohoes*, 931 F.2d at 227.  Once a movant establishes both prongs, "a rebuttable presumption of bad faith arises and the burden shifts to the debtor to 'establish good and sufficient reasons why the relief should not be granted.'" *In re Artisanal 2015, LLC*, No. 17-12319, 2017 WL 5125545, at *8 (Bankr. S.D.N.Y. Nov. 3, 2017) (quoting *Squires Motel, LLC v. Gance*, 426 B.R. 29, 34 (N.D.N.Y. 2010)); *see also In re Yukon Enters., Inc.*, 39 B.R. 919, 921 (Bankr. C.D. Cal. 1984). To rebut that presumption, the "debtor must demonstrate that 'unusual circumstances' exist establishing that 'dismissal is not in the best interests of creditors and the estate.'" *Squires Motel*, 426 B.R. at 35 (quoting 11 U.S.C. § 1112(b)(1)-(2)).

Before turning to whether "cause" exists for bad-faith dismissal, the Court will first examine the relevant standard of proof.  In the stay relief context, Congress expressly imposed a heightened standard to rebut a presumption of bad faith: where bad faith is presumed due to repeat filing under § 362(c), the debtor must rebut that presumption by "clear and convincing evidence to the contrary."  11 U.S.C. §§ 362(c)(3)(C), 362(c)(4)(D); *see also In re Kuvykin*, No. 18-10760, 2019 WL 989414, at *3 (Bankr. S.D.N.Y. Feb. 26, 2019) ("Under the statute, there is a presumption that the case was not filed in good faith, although it may be rebutted by clear and convincing evidence to the contrary."); *accord In re Carrigan*, 666 B.R. 840, 851 (B.A.P. 1st Cir. 2025) (noting that bad faith presumption "must be rebutted with clear and convincing evidence").

Regarding dismissal under § 1112(b), the statute is silent as to the standard of proof. Instead, courts have held that a movant bears the burden to establish "cause" for dismissal, including bad faith, by "a preponderance of the evidence."  *Squires Motel*, 426 B.R. at 50 (citing

*In re St. Stephen's 350 East 116th St.*, 313 B.R. 161, 170 (Bankr. S.D.N.Y. 2004)). Where the movant has produced evidence sufficient to give rise to a presumption of bad faith, the Debtor may rebut that presumption by demonstrating "good and sufficient reasons why the relief should not be granted," including evidence of "unusual circumstances" warranting the continuation of the case. *Artisanal*, 2017 WL 5125545, at *8; *Squires Motel*, 426 B.R. at 35. The ultimate burden of persuasion, however, remains with the movant. *See In re Awal Bank, BSC*, 455 B.R. 73, 83 (Bankr. S.D.N.Y. 2011); *see also In re FRGR Managing Member LLC*, 419 B.R. 576, 580 (Bankr. S.D.N.Y. 2009).

## A.  SUBJECTIVE BAD FAITH

The Court finds that FS Credit has failed to establish subjective bad faith under the totality of the circumstances. "Subjective bad faith" may be found where there is "no reasonable likelihood that the debtor intended to reorganize." *JJ Arch*, 663 B.R. at 281. This prong "is meant to [e]nsure that the Debtor actually intends to use [C]hapter 11 to reorganize and rehabilitate itself and not simply to cause hardship to its creditors by invoking the automatic stay." *In re RCM Global Long Term Capital Appreciation Fund, Ltd.*, 200 B.R. 514, 522 (Bankr. S.D.N.Y. 1996).

### 1.  The Record Does Not Reflect That the Debtor Filed Bankruptcy Solely to Invoke the Automatic Stay as a Litigation Tactic

Here, FS Credit's principal contention is that the Debtor filed this case primarily as a "litigation tactic"—to frustrate FS Credit's efforts to enforce the Blackstone Judgment—while using the protections of Chapter 11 to fund and prosecute its own affirmative claims against FS Credit, Nomura, and related parties in the pending New York Litigation.[4]  (Dkt. No. 52, ¶ 1). FS

---

[4]     While the filing of a bankruptcy petition triggers an automatic stay of prepetition proceedings *against* the debtor, it does not stay litigation that the debtor is prosecuting *as a plaintiff* against creditors or other parties in another forum. *See* 11 U.S.C. § 362(a); *see also 4Kids Entertainment, Inc. v. Upper Deck Co.*, 797 F.Supp.2d 236, 241 (S.D.N.Y. 2011) ("The automatic stay does not extend to claims brought by the debtors against other parties."); *In re Financial News Network Inc.*, 158 B.R. 570, 573 (S.D.N.Y. 1993) (quoting *Martin-Trigona v. Champion Federal Savings and Loan Association*, 892 F.2d 575, 577 (7th Cir. 1989)) ("[S]ection 362 mandates a stay only of litigation

Credit further argues that this inference of subjective bad faith is underscored by absence of any ongoing business to reorganize: the Debtor has "no business, no employees, no operations, and no assets other than speculative litigation claims," which, in FS Credit's view, means the case "serves no valid bankruptcy purpose." (*Id.* ¶¶ 32, 34). The Debtor does not dispute the underlying facts. (*See, e.g.*, First Day Declaration, Dkt. No. 6, ¶ 11) ("The Debtor commenced this Case to stay the litigation and enforcement of judgments against it and provide the Debtor an opportunity to prosecute its Litigation Claims.").

To be sure, a debtor may properly invoke Chapter 11 to stay pending litigation or halt enforcement of adverse judgments. *See, e.g.*, *In re Wythe Berry Fee Owner LLC*, 662 B.R. 36, 44 (Bankr. S.D.N.Y. 2024) (explaining that the automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws," which "stops all collection efforts, all harassment, and all foreclosure actions"); *In re JPA No. 111 Co., Ltd.*, No. 21-12075, 2022 WL 298428, at *11 (Bankr. S.D.N.Y. Feb. 1, 2022) ("[T]he mere fact that a debtor files for bankruptcy protection even on the eve of a foreclosure does not alone evidence bad faith[.]"); *Graham v. Prizm Associates, Inc.*, 20-cv-00461, 2022 WL 20403411, at *3 (S.D.N.Y. Jan. 10, 2022) ("The purpose of the automatic stay is to give the debtor a breathing spell from creditors."). Some courts have found that Chapter 11 may not be deployed principally to evade adverse legal outcomes or gain tactical litigation advantage—including where the debtor seeks the stay's protection while continuing to prosecute affirmative claims against other parties in another forum. *See, e.g.*, *In re The Bridge to Life, Inc.*, 330 B.R. 351, 356-57 (Bankr. E.D.N.Y. 2005) (holding that a "Chapter 11 filing may not be used as a litigation tactic to avoid the posting of a supersedeas bond" or "to obtain an upper hand or leverage in litigation with another party or to provide an alternate forum for such

_____

'against the debtor' … [and] it does not prevent entities against whom the debtor proceeds in an offensive posture … 'from protecting their legal rights.'").

litigation"); *In re Wally Findlay Galleries (New York), Inc.*, 36 B.R. 849, 851 (Bankr. S.D.N.Y. 1984) (dismissing a Chapter 11 case where the debtor sought to "avoid the consequences of adverse state court decisions while it continues litigating"); *In re WP Reality Acquisition III LLC*, 626 B.R. 154 (Bankr. S.D.N.Y. 2021) (citing *In re Laurel Highlands Foundation, Inc.*, 473 B.R 641, 655 (Bankr. W.D. Pa. 2012)) (noting that courts may dismiss a case where the debtor "initiated the bankruptcy in bad faith as a litigation tactic to avoid an imminent and potentially negative outcome in state court").

Crucially, the inquiry is not whether litigation considerations played *any* role in the filing, but whether the petition was filed *solely* to obtain an improper litigation advantage. In *Anmuth*, the bankruptcy court found bad faith where the case was commenced "as a litigation tactic, *solely* to avoid the consequences of an adverse state court decision." *In re Anmuth Holdings LLC*, 600 B.R. 168, 193 (Bankr. E.D.N.Y. 2019) (emphasis added). There, a petition was "filed within hours of receiving [an] adverse decision in the [state] appellate court." *Id*. Considering the totality of the circumstances, the *Anmuth* court concluded that "the timing of the filing" demonstrates "egregious bad faith and an improper use of the bankruptcy system." Other courts have likewise treated a petition filed shortly after an adverse state-court ruling as probative of subjective bad faith where the record shows the bankruptcy was commenced solely to gain an upper hand in the state proceeding. *See In re Silverman*, 230 B.R. 46, 52 (Bankr. D.N.J. 1998) (finding "egregious bad faith" where the petition was filed "within weeks of the state court ruling").

Although the Debtor's petition had the effect of staying enforcement of the Blackstone Judgment, the record does not support a finding that the Debtor commenced this case *solely* to obtain an improper tactical advantage in the New York Litigation. (Dkt. No. 52, ¶ 11). Rather, the record reflects that the Debtor filed bankruptcy for legitimate reasons independent of tactical

delay—including the preservation and prosecution of the estate's only material asset, the Debtor's litigation claims.  (Dkt. No. 61, ¶¶ 9-10, 33).  Courts have long held that protecting estate property from dissipation is a valid bankruptcy purpose.  *See In re Culligan Ltd*., No. 20-12192, 2023 WL 5942498, at \*20 (Bankr. S.D.N.Y. Sept. 12, 2023); *see also In re Aleris Int'l, Inc*., 456 B.R. 35, 46 (Bankr. D. Del. 2011) (noting that the automatic stay is intended to, among other things, "forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it").

Nor does the timing of the Debtor's filing, standing alone, establish subjective bad faith. The Debtor filed this case approximately one month after the New York Court entered a $990,368.90 judgment against the Debtor, while the Debtor's $53.7 million breach of fiduciary duty claim against FS Credit and related parties remains pending in the New York Litigation.  (Dkt. Nos. 1, 9).  The temporal proximity between the timing of the Blackstone Judgment and the petition date—coupled with the Debtor's own admission that it filed this case to stay adverse enforcement activity and to prosecute its litigation claims—supports FS Credit's contention that the filing was motivated, at least in part, by litigation strategy.  (Dkt. No. 52, ¶ 31) (citing *In re HBA E., Inc*., 87 B.R. 248, 260 (Bankr. E.D.N.Y. 1998) ("Chapter 11 was never intended to be used as a fist in a two-party bout.  The Chapter is entitled reorganization and not litigation.")).  It does not, however, establish that the Debtor filed this case solely to obtain an upper hand in the New York litigation, particularly where the record reflects a legitimate bankruptcy objective tied to preserving and administering the estate's only meaningful asset.

## 2.  The Record Shows That the Case Serves A Valid Bankruptcy Purpose

FS Credit has failed to establish that, at the time of filing, the Debtor did not intend to pursue an orderly reorganization process.  The subjective bad faith inquiry focuses on the debtor's intent "at the time of filing," not on later developments in the case.  *In re 221-06 Merrick Blvd. Assocs. LLC*, No. 1-10-45657, 2010 WL 5018265, at \*3 (Bankr. E.D.N.Y. Dec. 3, 2010); *see also*

*Cohoes*, 931 F.2d at 227. "[W]here the debtor evidences an intent to reorganize at the outset of the case," disputes about the debtor's ability to confirm a plan "are not matters to be determined on a motion to dismiss for a 'bad faith' filing, which looks to the status of the matter on the filing date." *Sletteland*, 260 B.R. at 667 (quoting *Cohoes*, 931 F.2d at 227); *see also C-TC 9th Avenue*, 113 F.3d at 1309-10. In *Merrick*, the court denied dismissal under § 1112(b) after finding that the debtor filed in good faith to obtain time to negotiate a loan modification, even though the filing had the practical effect of frustrating the creditor's foreclosure efforts. *See Merrick*, 2010 WL 5018265, at *3. The *Merrick* court also emphasized that the debtor had "made progress towards reorganization by negotiating with potential commercial tenants," which evidences good faith intent at the outset. *Id*.

The same considerations weigh against a finding of subjective bad faith here. Although the Debtor's petition stayed enforcement of the Blackstone Judgment, the record indicates that the Debtor took concrete steps to reorganize consistent with Chapter 11's rehabilitative purposes, rather than merely invoking the automatic stay as a litigation tactic. *See LNC Investments, Inc. v. First Fidelity Bank*, 247 B.R. 38, 48 (S.D.N.Y. 2000) ("In the context of a Chapter 11 reorganization, a primary objective of the Code is the rehabilitation of the debtor.") (*See* First Day Declaration, Dkt. No. 6, ¶ 11; *see also* Memorandum Opinion, Dkt. No. 63). Most notably, the Debtor sought post-petition financing to preserve and administer what the Debtor identifies as the estate's principal asset: its litigation claims. The Court approved that financing after reviewing it under "entire fairness" scrutiny and finding it "intrinsically fair" under the circumstances. (*See* Memorandum Opinion, Dkt. No. 63). Regardless of the merits or value of the litigation claims, the Debtor's effort to obtain post-petition DIP financing reflects "progress toward reorganization"

14

and weighs against the inference that the case was filed solely to obtain litigation advantage.  *See*

*Merrick*, 2010 WL 5018265, at *3.

### 3.  The Record Shows That the Case Is Not a "Two-Party Dispute"

The Court declines to find subjective bad faith for the additional reason that this case does

not bear the typical hallmarks of a "two-party dispute."  One of the key factors that support a bad-

faith finding is whether "the debtor's financial condition" essentially reflects a "two-party dispute

between the debtor and secured creditors" that can be resolved in another forum.  *C-TC 9th Avenue*,

113 F.3d at 1310.  In the Motion, FS Credit argues that bad faith exists because "the Debtor's case

is essentially a two-party dispute meant to benefit a select group of insiders, not a collective

proceeding for the benefit of a creditor community."  (Dkt. No. 52, ¶ 35).  FS Credit further asserts

that "the majority of the Debtor's scheduled unsecured claims are disputed, and most are held by

the litigation targets or insiders."  (*Id*.).

The Court is unpersuaded.  Here, the relevant inquiry is whether Chapter 11 is being used

as a substitute for ordinary litigation, rather than a forum to administer and preserve estate value

for the aggregate welfare of creditors.  *See HBA*, 87 B.R. at 260 ("Chapter [11] is entitled

reorganization and not litigation.");  *see also In re Ngan Guang Restaurant*, 254 B.R. 566, 571

(Bankr. S.D.N.Y. 2000) ("[A] clear purpose of Chapter 11 is to benefit all parties … by providing

a breathing space to enable a debtor to reorganize … [in which] a debtor proposes a plan … to

maximize value for the general benefit of all creditors, thus avoiding a mad scramble for assets.").

The record does not support FS Credit's characterization of this case as a "two-party dispute."  The

Debtor's schedules list substantial claims held by creditors who are not parties to the New York

Litigation, including ACVT I, LLC ($203,438.00 unsecured claim), DFIN Solutions ($654,813.00

unsecured claim), Early Bird Capital ($4,830,000.00 unsecured claim), and UHY LLP

($220,502.00 unsecured claim).  (Dkt. No. 1, Official Form 204).  Only Nomura, also a defendant

in the New York Litigation, joined FS Credit's Motion. (Dkt. No. 60). By contrast, the DIP Lender filed a joinder opposing dismissal, and another creditor (Turasky) expressed support for the Debtor at the Hearing. (Dkt. No. 62; Jan. 9, 2026 Hr'g Tr.).

The composition of secured claims likewise undercuts FS Credit's framing of the case as a "two-party dispute." The Debtor's schedules reflect a $560,030.00 prepetition secured claim held by the DIP Lender. (*Id*. Schedule D). And as the Court explained in the Memorandum Opinion, while the DIP Lender was treated as an insider for purposes of § 364 review, not all members of the DIP Lender occupy managerial roles or hold equity interests in the Debtor. (*See* Memorandum Opinion, Dkt. No. 63). On this record, the Court finds that the prosecution and preservation of the Debtor's principal asset—its litigation claims—cannot be fairly characterized as conduct undertaken solely to "benefit a select group of insiders." (Dkt. No. 52 ¶ 35). Instead, to the extent those claims have value, preserving them and preventing dissipation could enhance estate value for the benefit of the creditor body as a whole. Accordingly, the "two-party dispute" factor does not support a finding of subjective bad faith here.

### B. OBJECTIVE FUTILITY

The Court also finds that FS Credit has not established objective futility. A case is "objectively futile" where "there is no reasonable possibility that the debtor will emerge from bankruptcy." *JJ Arch*, 663 B.R. at 281. Courts have found objective futility where "there is no realistic prospect for a successful rehabilitation or reorganization under Chapter 11," including where a debtor "has not filed a plan and is unable to do so." *In re Tucker*, 5 B.R. 180, 184 (Bankr. S.D.N.Y. 1980); *see also In re East End Development, LLC*, 491 B.R. 633, 641 (Bankr. E.D.N.Y. 2013) (citing *C-TC 9th Avenue*, 113 F.3d at 1310) ("[T]he moving party has the burden of proof that 'from the date of the filing the debtor has no reasonable probability of emerging from the bankruptcy proceeding and no realistic chance of reorganizing.'").

Like subjective bad faith, the objective futility inquiry focuses on whether, "at the time of filing," there was "no realistic prospect for a successful rehabilitation or reorganization under Chapter 11." *Tucker*, 5 B.R. at 184; *see also Sapphire*, 549 B.R. at 568 n.14; *Squires Motel*, 426 B.R. at 34 ("[T]he movant must demonstrate the objective futility of the reorganization process such that at the time of filing there was no reasonable probability that (the debtor) would eventually emerge from bankruptcy proceedings.").    Later case developments that render a plan unconfirmable or infeasible are irrelevant to the Court's analysis.  *See Sletteland*, 260 B.R. at 667 (noting that disputes about the debtor's ability to confirm a plan "are not matters to be determined on a motion to dismiss for a 'bad faith' filing, which looks to the status of the matter on the filing date").

### 1.  The Debtor's Case Is Not Objectively Futile Because The Record Reflects A Realistically Attainable Path to Reorganization

Here, FS Credit argues that a confirmable Chapter 11 plan is not realistically attainable because the Debtor has no meaningful source of funding for plan distribution, other than contingent proceeds from the New York Litigation.  (Dkt. No. 52 ¶¶ 34, 37).  In FS Credit's view, "[a]part from speculative litigation recovery," there is no apparent mechanism to generate cash to fund plan distributions.  (Dkt. No. 52, ¶ 37).  "The best case scenario" is that creditors would "wait indefinitely for the remote possibility of a favorable litigation outcome, which is far from assured and may take years to reach." (*Id*.).  FS Credit further emphasizes that the Debtor has not proposed a plan and contends that there is no feasible path to confirmation when the Debtor's largest prepetition secured creditor—the DIP Lender—is an "insider whose votes do not count" for purposes of § 1129 cramdown.  (*Id*. ¶ 39) (citing 11 U.S.C. § 1129(a)(10) (requiring that, if a class of claims is impaired under a reorganization plan, at least one class of impaired claims must accept the plan, excluding any acceptance by insiders)).

17

In support, FS Credit contends that the Debtor's uncontested unsecured claims are too small to yield a meaningful impaired accepting class for purposes of plan confirmation without manipulation. *See* 11 U.S.C. § 1129(a)(10). FS Credit asserts that, as of the petition date, the Debtor disputed more than $7.3 million of roughly $9 million in liquidated unsecured claims, leaving approximately $1.5-$1.6 million in non-disputed unsecured claims based on Schedule E/F. (Dkt. No. 1; *see also* Reply, Dkt. No. 65, ¶ 15). FS Credit further argues that its liquidated judgment claim of $990,368.90 constitutes the largest single liquidated unsecured claim and comprises well over one-third of the undisputed unsecured pool. (*Id.*). In that posture, FS Credit contends, the Debtor cannot obtain an impaired, non-insider accepting class without "manufacturing" a small "friendly" impaired class for voting purposes. (*Id.*).

While the Debtor's purported inability to confirm a plan consistent with § 1129(a)(10) may be probative of objective futility, the Court disagrees with FS Credit's claim that the debtor has *no* reasonable possibility of emerging from Chapter 11. The objective futility inquiry is not a trial on plan confirmation. *See Sletteland*, 260 B.R. at 667. It merely asks whether there is *any realistic path* to a confirmable outcome, including a liquidating plan, given the debtor's posture and assets at the outset. *See Tucker*, 5 B.R. at 184.

Here, the Debtor has identified a realistic path to reorganization. The Debtor points to examples in which Chapter 11 debtors whose primary estate assets were litigation claims proceeded through Chapter 11, confirmed a plan establishing a litigation vehicle, and pursued recoveries for creditors. (*See* Response, Dkt. No. 61, ¶¶ 26-27). In particular, the Debtor relies on *FastShip*, in which the debtors entered Chapter 11 with only litigation assets, confirmed a plan, and later pursued recoveries through a post-confirmation vehicle, ultimately resulting in a multi-million-dollar recovery for the benefit of creditors. *See generally In re FastShip, Inc.*, No. 12-

18

10968 (Bankr. D. Del. filed Mar. 20, 2012; plan confirmed June 28, 2012) (Dkt. No. 133); *see also*

*FastShip, LLC v. United States*, 143 Fed. Cl. 700, 709 (2019).  *FastShip* demonstrates that a

Chapter 11 case is not necessarily futile merely because the estate's principal asset is a litigation

claim.

Consistent with the *FastShip* framework, the Debtor represents that it expects to propose a

liquidating plan that transfers its litigation claims to an estate-controlled trust or similar vehicle.

(Dkt. No. 61, ¶¶ 26-27).  The Debtor also expects to fund administrative expenses from the

approved DIP financing, pay creditors using litigation proceeds, and implement governance

mechanisms designed to ensure fiduciaries make decisions in the creditors' interests.  (*Id.*).  The

Debtor further asserts that the plan can satisfy § 1129(a)(10) without relying on the vote of its

conflicted secured creditor, the DIP Lender.  (*Id.*).  At this stage—and for purposes of the objective

futility inquiry—the Court need not decide whether those arguments will likely prevail at

confirmation.  It suffices that the Debtor posits a non-speculative, realistically attainable pathway

to plan confirmation.

### 2. The Debtor's Lack of Business Operations, Employees, and Assets Beyond the Litigation Claim Does Not, By Itself, Establish Objective Futility

To the extent FS Credit argues that the case is objectively futile due to the Debtor's lack of

ongoing operations and the fact that the Debtor's principal asset is a litigation claim, the Court is

unpersuaded.  FS Credit claims that bad faith is manifest because the Debtor's lack of meaningful

operations and assets shows that the "Debtor is a shell entity that exists solely to litigate."  (Dkt.

No. 52, ¶ 33).  In support, FS Credit relies on cases in which courts found objective futility where

a corporate debtor had no employees, no business operations, and no viable assets to support a

confirmable plan.  (Dkt. No. 52, ¶ 32).  *See, e.g.*, *In re Traxcell Technologies, LLC*, 657 B.R. 453,

460-62 (Bankr. W.D. Tex. 2024) (finding bad faith where the debtor "has no employees besides its

principals," "no cash flow," "no income to fund a plan," and its sole asset consists of "expired patents" used for litigation); *Sapphire Development, LLC v. McKay*, 549 B.R. 556, 570 (Bankr. D. Conn. 2016) (finding bad faith where the debtor has "no employees" and "little cash flow," and the debtor's sole asset was its disputed interest in real property); *In re Briggs-Cockerham, L.L.C.*, No. 10-34222, 2010 WL 4866874, at *3 (Bankr. N.D. Tex. Nov. 23, 2010) (finding bad faith where the debtor "has no operations, no cash, no bank accounts," and "no assets" other than speculative litigation claims against the trustee).

Those cases, however, largely involved operating companies (or real-estate entities) whose lack of cash flow, business operations, and enterprise value reflected the absence of any realistic path to rehabilitation. They do not squarely address the posture of a SPAC.

A SPAC, by design, is not an operating business.[5] Its purpose is to consummate a business combination within a defined period; if that transaction fails, the remaining enterprise is often a shell entity whose value—if any—resides primarily in residual rights and claims. *See In re DraftKings Inc. Securities Litig.*, 650 F.Supp.3d 120, 134 n.2 (S.D.N.Y. 2023) ("[F]ailure to consummate a combination within that period automatically dissolves the SPAC, returns funds to investors and may leave the SPAC's founders and management team uncompensated for years' worth of work and start-up costs."). In that context, the absence of employees or operations is not indicative of objective futility. Accepting FS Credit's position would effectively treat a SPAC's structural characteristics as dispositive of objective futility, collapsing the objective futility inquiry

---

[5]     A "SPAC" is a "blank check company" formed for the "purpose of acquiring or merging with an existing company that wants to go public." (Dkt. No. 9, ¶ 1). "SPACs have a limited amount of time to complete an acquisition before the funds raised must be returned to the IPO investors." (*Id.*). If the acquisition, or de-SPAC transaction, fails, the SPAC is "required to redeem its IPO investors by returning to them the funds held in trust," leaving the SPAC with "no operating business or employees." (*Id.*).

into a categorical rule that SPACs cannot reorganize in Chapter 11 once a de-SPAC transaction fails. The Court declines to adopt that view.

Objective futility remains a case-specific factual inquiry into whether there is a reasonable possibility of emerging from bankruptcy; courts must weigh the totality of the circumstances. *See JJ Arch*, 663 B.R. at 281; *see also In re Edwards*, No. 03-10018, 2003 WL 22016324, at *4 (Bankr. D. Vt. Aug. 26, 2003) ("Like good faith, an assessment of bad faith is based on the totality of the circumstances"); *cf. In re Sutliff*, 72 B.R. 151, 154 (Bankr. N.D.N.Y. 1987) ("The consensus of case law holds that good faith is to be determined by weighing the totality of the facts and circumstances on a case by case basis."). The record here supports the conclusion that such a possibility is not foreclosed merely because the Debtor is a SPAC. Moreover, the Debtor has taken substantial, concrete steps to preserve and administer the principal estate asset, including obtaining post-petition secured financing from the DIP Lender. (*See* Memorandum Opinion, Dkt. No. 63). Those steps weigh against a finding of objective futility.

## C. THE BEST INTEREST OF CREDITORS AND THE ESTATE

Even assuming *arguendo* that bad faith exists under both prongs of *JJ Arch*, dismissal is not warranted here because it would not serve "the best interests of creditors and the estate." *See* 11 U.S.C. § 1112(b). The Court agrees with the Debtor that, on this record, dismissal would risk extinguishing the estate's only meaningful prospect of recovery for creditors as a whole.

Section 1112(b) does not end the inquiry at finding "cause." It also requires the Court to determine whether dismissal (or conversion) would serve "the best interests of creditors and the estate." *See Kingston Square*, 214 B.R. at 737 ("Section 1112(b) requires consideration of what is in the best interests of creditors and the estate[.]"). That inquiry is holistic: it directs courts to consider the anticipated impact of dismissal on the collective welfare of *all* creditors, rather than the interests of a particular creditor or a select group. *See, e.g., In re DB Capital Holdings, LLC*,

No. 10-25805, 2011 WL 5520439, at *3 (Bankr. D. Colo. Nov. 14, 2011) ("The best interests of the creditors test addresses the interests of the creditor body as a whole."); *cf. In re Kent*, 2:07-bk-03238, 2008 WL 5047799, at *8 (Bankr. D. Ariz. Sept. 23, 2008) (granting dismissal after finding that, "in considering the creditor body as a whole, dismissal is in the best interest of all creditors involved").

In *Kingston Square*, the Court denied dismissal where "the only parties who would benefit from dismissal [were] the [m]ovants, while unsecured creditors and limited partners would be left with nothing" if the case were dismissed to permit foreclosure in state court. *Kingston Square*, 214 B.R. at 737. That same concern is present here. As the Court has already explained, the record indicates that the estate's only significant asset is the Debtor's litigation claims, and the continuation of this Chapter 11 case is necessary to prosecute and preserve those claims for the benefit of the estate. (Dkt. No. 9, ¶¶ 18, 20). Thus, dismissing the case at this juncture would materially jeopardize the only plausible source of recovery available to creditors generally, while conferring a disproportionate benefit on the movants who seek to resume individualized collection efforts in state court. (*Id*.). *See In re Tribune Company Fraudulent Conveyance Litig*., 946 F.3d 66, 76 (2d Cir. 2019) (explaining that bankruptcy seeks to "protect creditors as well as the debtor" by avoiding "individual actions by creditors seeking individual recoveries from the debtor's estate"); *accord Harrington v. Purdue Pharma L.P*., 603 U.S. 204, 232 (2024) ("One of the goals of Chapter 11 … is to fairly distribute estate assets among creditors in order to prevent a race to the courthouse to dismember the debtor") (internal quotations omitted).

Accordingly, considering the totality of the circumstances, the Court finds that dismissal is not in the best interests of creditors and the estate.

VI.    <u>**CONCLUSION**</u>

For the foregoing reasons, the Court concludes that FS Credit has failed to demonstrate "cause" for dismissal under 11 U.S.C. § 1112(b) based on allegations of bad faith.  Accordingly, the Motion is **DENIED**.

**IT IS SO ORDERED**.


Dated: February 6, 2026
New York, New York                          /s/ John P. Mastando III
                                                          HONORABLE JOHN P. MASTANDO III
                                                          UNITED STATES BANKRUPTCY JUDGE